THE STATE OF OHIO, APPELLEE, *v.*
GOBLE, APPELLANT.

(No. 1123—Decided August 4, 1982.)

*Mr. Gregory W. Happ,* prosecuting
attorney, for appellee.

*Mr. V. Lee Winchell,* for appellant.

BELL, J. Defendant-appellant,
Samuel Goble, was indicted for kidnap-
ping (R.C. 2905.01[B][1] and [2]) and
felonious assault (R.C. 2903.11[A][2]). A
trial by jury was had resulting in defen-
dant's conviction of the lesser included of-
fense of abduction and of felonious
assault. Defendant now appeals and sets
forth the following assignments of error:

"I.  The trial court erred in admit-
ting the photographic lineup which in-
cluded the defendant-appellant into
evidence and in permitting the victim to
identify the defendant-appellant at the
time of trial.

"II.  The trial court erred in permit-
ting Detective Michael Sobie to testify as
to the results of physical tests performed
by him, or in the alternative, in not grant-
ing the defendant-appellant's request for
a continuance.

"III.  The trial court erred by failing
to grant defendant-appellant's motion for
directed verdict in his favor in regards to
Count two of the indictment.

"IV.  The trial court erred by in-
structing the jury on the lesser included
offense of abduction over the objection of
the defendant-appellant."

We turn to the testimony given by
Mrs. Randolph, the victim of the crimes
charged against defendant, for some fac-
tual background. She indicated that on
April 30, 1981, shortly after 6:00 a.m., she
stopped at a Lawson's Store on her way
to work to purchase cigarettes. Thinking
to run in and out of the store quickly, she
left her vehicle unlocked, with lights on,
and with motor running. Returning to her
car, she noticed nothing amiss and pro-

ceeded to drive away. Then, hearing a "rattling type noise," she started to look in the rear view mirror when a voice from the back seat told her to keep her eyes on the road. The defendant, apparently mistaking Mrs. Randolph for someone else, called her by the name "Mag" or "Meg" and pushed a knife against the back of her neck. Still holding the knife, he climbed from the back to the front bench seat and pushed it against Mrs. Randolph's rib cage producing a visible indentation mark. She asked him not to hurt her, to let her go, but defendant responded she would "go to the law" if he did so and pressed the knife harder into her side. A noise came from the front portion of the car, and Mrs. Randolph feigned that her hood had jerked up and acted as though she had to get out of the car to latch it. Defendant, at the same time, also began exiting the car and she drove away without him. Shortly thereafter, she called police.

During the time the defendant was climbing over the seat, and was in the front seat, Mrs. Randolph had opportunities to observe him and mentally told herself to remember what he looked like. She particularly noted a tattoo of the word "love" on one of his hands and a scar on his face.

Taking defendant's claims in chronological order, we first consider whether the court erred in admitting into evidence the photographic lineup and the victim's in-court identification. Defendant claims that circumstances surrounding his photographic identification by the victim and her testimony indicate that the identification was the product of an improper photographic lineup and not her independent recollection.

Defendant more specifically argues that the photographic lineup was so suggestive as to give rise to a substantial likelihood of misidentification because the photographs used in the lineup were all mugshots and all had dates of arrest therein. Several also showed the hands of the subjects. Of overriding significance in our review of this pre-trial photographic lineup is that, indeed, *all* the photos shown to the victim were "mugshots" bearing arrest dates, not just defendant's. See *State* v. *Jackson* (1971), 26 Ohio St. 2d 74, 78 [55 O.O.2d 127]; and *Simmons* v. *United States* (1968), 390 U.S. 377 [64 O.O.2d 45].

Our review of the totality of the circumstances revealed by the instant record confirms that the photographic identification procedure herein was not so "impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons, supra,* at page 384; *Neil* v. *Biggers* (1972), 409 U.S. 188, 197; and *State* v. *Howze* (1979), 66 Ohio App. 2d 41, 47 [20 O.O.2d 106]. After consideration of pertinent case law, as well as the totality of the circumstances, we do not find this claim of error to be meritorious.

Nor do we find merit in defendant's second claim of error. The record before us does not reveal that defendant was prejudiced by Detective Sobie's testimony. Particularly in light of the fact that defendant claimed an alibi defense, it appeared reasonable for the prosecution to present testimony from a detective who, utilizing common sense, had performed investigative work regarding possible routes taken by defendant and the times of travel involved therein. We are unwilling to state that such work constituted a "scientific test" or "experiment" as is referred to in Crim. R. 16 (B)(1)(d). Further, however, defendant had ample opportunity to question other witnesses as to such matters, as well as the opportunity to cross-examine Detective Sobie. Avenues of refutation of this testimony were not foreclosed to defendant. "The mere fact that a party is unaware of reliable and probative evidence does not, in and of itself, give grounds for exclusion." *State* v. *O'Neil* (Feb. 17, 1982), Wayne App. No. 1771, unreported. In order to demonstrate prej-

udicial error, the appellant must show an abuse of the trial court's discretion in its determination as to whether to utilize Crim. R. 16 (E)(3) sanctions. *O'Neil, supra.* We find no such showing within this cause. Assignment of Error No. 2 is overruled.

In Assignment of Error No. 3, defendant contends that there is "a complete lack of proof of the element of felonious assault of causing or attempting to cause physical harm to the victim." At trial defendant moved at the close of the state's case and at the close of all of the evidence, for a directed verdict in regard to the count of felonious assault, in violation of R.C. 2903.11 (A)(2).

It is important to note at the outset that we are addressing the definition of "physical harm," as that phrase is used in the felonious assault statute. By the clear language of R.C. 2901.01 (C), the gravity or duration of the "injury, illness, or other physiological impairment" is not a factor for consideration. Where a knife has been held so tightly, and with such pressure, that a red indentation remains after the knife is no longer present, has the victim suffered "physical harm?" The aforementioned language of R.C. 2901.01 (C) mandates that *any* injury, regardless of its gravity or duration, may constitute physical harm. This being so, there was sufficient evidence presented in the instant cause to allow the trial jury to determine that physical harm was done by defendant to Mrs. Randolph. See Judge Whiteside's concurrence/dissent in *State* v. *Conliff* (1978), 61 Ohio App. 2d 185, at 195-196 [15 O.O.3d 309]; see, also, *State* v. *Tate* (1978), 54 Ohio St. 2d 444 [8 O.O.3d 441].

Accordingly, we find no merit in Assignment of Error No. 3.

Finally, appellant claims that the trial court committed error in instructing the jury concerning the lesser included offense of abduction because his defense was such that, if accepted by the jury, it would have constituted a complete defense to the crime of kidnapping as well as to the lesser included offense of abduction.

We do not agree. Our Supreme Court made it clear in *State* v. *Wilkins* (1980), 64 Ohio St. 2d 382 [18 O.O.3d 528], that such a rigid ruling was clearly not intended by its decision in *State* v. *Nolton* (1969), 19 Ohio St. 2d 133 [48 O.O.2d 119]. The *Wilkins* court then went on to restate the rule, at page 388, as follows:

"To clarify, we are restating the rule as follows:

"If the evidence adduced on behalf of the defense is such that if accepted by the trier of fact it would constitute a complete defense to all substantive elements of the crime charged, the trier of fact will not be permitted to consider a lesser included offense unless the trier of fact could reasonably find against the state and for the accused upon one or more of the elements of the crime charged, and for the state and against the accused on the remaining elements, which, by themselves, would sustain a conviction upon a lesser included offense.

"The persuasiveness of the evidence regarding the lesser included offense is irrelevant. *If under any reasonable view of the evidence it is possible for the trier of fact to find the defendant not guilty of the greater offense and guilty of the lesser offense, the instruction on the lesser included offense must be given.* The evidence must be considered in the light most favorable to defendant." (Emphasis added.)

See *State* v. *Solomon* (1981), 66 Ohio St. 2d 214 [20 O.O.3d 213], paragraph two of the syllabus.

Defendant further contends that there was no evidence produced upon which the trier of fact could find for the defendant and against the state on a kidnapping element not required to prove abduction. From the evidence presented in the within cause the jury could have possessed reasonable doubt, and may well have, as to the proof of the kidnapping

element of "substantial risk of serious physical harm to the victim." R.C. 2905.01 (B). In abduction the state must prove the creation of a "risk of physical harm to the victim or place him in fear." R.C. 2905.02 (A)(2). From the evidence presented the jury could reasonably determine the defendant to be guilty of abduction and not guilty of kidnapping.

The fourth assignment of error is overruled; the judgment is affirmed.

*Judgment affirmed.*

VICTOR, P.J., and QUILLIN, J., concur.